34 C.C.P.A. (Patents)

**SIMPSON et al. v. VOORHEES.**

**Patent Appeal No. 5195.**

Court of Customs and Patent Appeals.

Dec. 9, 1946.

Rehearing Denied Feb. 7, 1947.

Oswald G. Hayes, of Manhasset, N. Y. (Richard K. Stevens, of Washington, D. C., of counsel), for appellants.

Donald E. Payne and Pike H. Sullivan, both of Chicago, Ill., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

This is an appeal from a decision of the Board of Interference Examiners of the United States Patent Office awarding the appellee, who is the junior party, priority of the invention defined in two counts, which are the only counts at issue.

The interference was declared between appellee's patent No. 2,239,801, issued April 29, 1941, on an application filed January 8, 1938, and appellants' application, Serial No. 361,440, filed October 16, 1940, as a continuation-in-part of their co-pending application, Serial No. 162,541, filed September 4, 1937.

Appellants copied claims from appellee's patent; the counts here involved, however, were added to the interference on motion of appellants and are related to claims 5 and 6 of Voorhees' patent but modified for the purpose of interference.

The issue here is confined to the question as to whether or not the above referred to applications of appellants, which, it is alleged, are similar in respects with which we are here concerned, disclose certain limitations in the counts.

The Primary Examiner held with appellants on this question. The Examiner of

Interferences accorded appellants the benefit of the filing date of their earlier application and notified Voorhees that judgment on the record would be entered against him unless he should show cause why such action should not be taken. Voorhees responded to this order by moving that the case be set down for final hearing and the prosecution of the interference as to the two counts here involved proceeded.

The board in its decision disagreed with the conclusion reached by the Primary Examiner and held that in two respects appellants' application did not disclose the controverted limitations hereinafter referred to, and awarded priority of invention of the subject matter in issue to appellee.

The counts read:

"4. The method of converting a liquid hydrocarbon oil into high quality gasoline by a process comprising catalytic cracking which method comprises *heating said oil to effect vaporization thereof and to effect super-heating of the vapors to a conversion temperature,* introducing said superheated vapors into a moving bed of catalyst in a conversion zone, introducing catalyst into said zone and removing catalyst from said zone without appreciable losses of hydrocarbon vapors with said catalyst, continuously regenerating said removed catalyst in a separate zone at high temperature and returning said high temperature regenerated catalyst to said conversion zone in admixture with fresh catalyst, preventing regeneration gases from entering the conversion zone, and fractionating the products from the conversion step into a gasoline fraction, a gas fraction and at least one heavier-than-gasoline fraction.

"5. The method of count 4 which includes the further step of vaporizing adsorbed oil from catalyst *prior to its transfer from the conversion zone to said regeneration zone* by contacting said catalyst with a hot inert gas."

The italicized portions indicate the limitations in controversy.

In our view of the case it will be necessary for us only to consider the board's decision with respect to the first limitation relating to super-heating. It will not be necessary for us to consider the questions raised with reference to the second limitation found in count 5, nor many of the questions raised by appellee which, under the settled practice, it has a right to raise without cross-appeal.

It is the position of appellee, and was that of the board, that the limitation in the count, "heating said oil * * * to effect super-heating of the vapors to a conversion temperature," is not disclosed in appellants' applications, whereas appellants urge that the following disclosure in their said applications is a sufficient disclosure of the controverted and above referred to limitation:

"Vapor preparation unit 46 will consist essentially of a heater, for which purpose any of the usual forms of heaters common in the art, *say a pipe still, may be used to vaporize the charge and heat it up to reaction temperature;* and, if the charge used is not wholly vaporized at the reaction temperature, a vapor separator to remove unvaporized liquid residue may be included." [Italics ours.]

The appellants further argue that the provision in said quoted excerpt with reference to the use of a "pipe still" necessarily and inherently discloses such superheating as the count calls for, and that the prior art, on which appellants largely rely to fortify their contentions of disclosure, shows that such super-heating is inherent in prior art devices and is well understood in the art.

The applications of both parties and the claims in the applications and patent of the respective parties disclose a complete method of converting oil into gasoline. It will not be necessary for us to describe the process in detail because it is conceded that much of the process employed by both parties is conventional and involves highly technical matters with which we are not here concerned.

The exact issue may be fairly understood by a reading of the board's decision and we think the board's views on this question should be set out at some length. We quote therefrom as follows:

"The party Simpson, Payne, and Crowley, Jr. contends, and the same conclusion

was reached by the primary examiner in his decision on motions \* \* \*, that the language 'to vaporize the charge and heat it up to reaction temperature' \* \* \* constitutes a disclosure of the limitation 'to effect vaporization thereof and to effect super-heating of the vapors to a conversion temperature' in the interference counts. There is no question as to the vaporizing step and the issue is therefore resolved into the question of whether 'heat it up to reaction temperature' supports 'to effect super-heating.'

"In order to arrive at the same conclusion which the primary examiner reached, it is necessary to hold that 'reaction temperature' is inherently a 'super-heating' temperature. Whatever might be the result if the sentence quoted above from the Simpson et al. application were to end at the semicolon, the matter after the semicolon requires a holding that 'reaction temperature' does not necessarily mean 'super-heating' temperature. In other words, 'reaction temperature' may mean that the charge is incompletely vaporized, exactly vaporized, or super-heated. However, there is no specific teaching of the last operation, which is the one required for the interference counts. As stated in Re Dubbs, 77 F.2d 520, 522, 22 C.C.P.A., Patents, 1281, 1935 C.D. 645, 461 O.G. 7;

" 'In view of the fact that there is nothing in his specification to indicate that the claimed process would be carried out in the normal and usual operation of his apparatus, and in the absence of a disclosure of the steps called for in the appealed claims, the mere fact that the apparatus disclosed by him might *permit* the carrying out of such process does not warrant a holding that he is entitled to make such claims.'

"Similarly, in the case of McCormick v. Malherbe, 116 F.2d 520, 523, 28 C.C.P.A., Patents, 838, 1941 C.D. 222, 526 O.G. 3, the Court held, 'Under circumstances like those at bar, for a disclosure to support interference counts, there must be more than a possibility that a certain process will be followed if the teachings are followed. There must be some positive, definite disclosure of the steps of the process, or such a disclosure of steps that if the teachings

are followed by one skilled in the art the process must inevitably result.'

"To the same effect is the decision in Keeling v. Heid, 118 F.2d 571, 28 C.C.P.A., Patents, 1008, 1941 C.D. 392, 529 O.G. 520.

"It is recognized that the specific word 'super-heating' need not be found in the Simpson et al. specification, provided equivalent language is used or inherent operation disclosed. For example, the boiling range of the charge might be given or a specific fraction designated which has a standard boiling range and the temperature to which the charge is heated might be taught. However, there is no disclosure from which 'super-heating' might be unequivocally spelled out.

"The party Simpson, Payne and Crowley, Jr. urges that the disclosure of super-heating in the Simpson et al. application is better than that in the Voorhees patent, which may not disclose super-heating at all \* \* \*. It may be noted that Simpson, Payne, and Crowley, Jr. did not file a motion under Rule 122 to dissolve the interference on the ground that Voorhees has no right to make the counts and that question is not under consideration here. Beatie v. Pollock, 71 F.2d 306, 21 C.C.P.A., Patents, 1150, 1934 C.D. 505, 448 O.G. 5.

"Since it is held that the directly involved Simpson et al. application does not support the limitation 'to effect super-heating of the vapors,' it is unnecessary to decide whether this feature is disclosed in the first Simpson et al. application, now abandoned."

We agree with the holding of the board that when the controverted limitations of the counts are read in the light of appellee's patent there is not sufficient disclosure of this important limitation by appellants, and we are brought to this conclusion for several reasons.

While it is not necessary that the word 'super-heating' be found in appellants' application it is necessary that there should be such a teaching or disclosure of apparatus or method that inherently produces the super-heating that is called for by the counts. A glance at the drawings of the respective parties shows that in this feature

the inventions disclosed differ greatly. Appellants propose to initially heat the oil, as is pointed out in the above quoted excerpt from their application, for the purpose of vaporizing the charge up to reaction temperature. No further heating is provided for, it being argued that if enough heat is used the vapors will go off and will be at such a temperature as fairly to respond to super-heating, whereas appellee clearly discloses super-heating the vapors after heating the oil to effect vaporization thereof. This obviously is a wholly different process from that disclosed by appellants. One following the teachings of appellants would not super-heat the vapors after they had once been driven off by heat regardless of how much heat appellants used in the first process.

We have looked in vain for any teaching in appellants' disclosure that they ever contemplated reheating or super-heating, or adding any new and additional heat to the vapor other than the heat initially applied, and we are of the opinion that nothing in their disclosure inherently teaches or suggests this particular feature.

Surely the term, "to vaporize the charge and heat it up to reaction temperature," does not indicate that appellants first vaporize the charge and subsequently heat it to reaction temperature. If appellants heat the charge at all to reaction temperature, and if this amounted to super-heating, the most that could be said is that they only super-heat the initial charge. The appellants do show that if a charge is not wholly vaporized at the reaction temperature then a vapor separator to remove unvaporized liquid residue may be included, but they do not say that additional heat is then applied to the vapors after the removal of the liquid residue and this, as we interpret the count, is the proper construction of the same.

Moreover, if it could be argued that appellants obtained the same results it would not be by the same method, which fact may go to the patentability of the counts which is a matter with which we are not here concerned.

We think the board's holding was sound, and its decision awarding priority of the invention defined in the counts to the appellee is affirmed.

Affirmed.